

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 2368 | DATE | 9/5/2003 |
| CASE TITLE | Lawrence Dalton vs. Warden, Oshkosh Correctional Instit | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's amended petition for a writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 08 2003 | |
| | Notified counsel by telephone. | date docketed | 110 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH ✓ | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE DALTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 97 C 2368 |
| ) | |
| WARDEN, Oshkosh Correctional ) | |
| Institution, and LISA MADIGAN, ) | |
| Attorney General of Illinois, ) | |
| ) | |
| Respondents. ) | |

DOCKETED
SEP 0 8 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Before this Court is petitioner Lawrence Dalton's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Dalton's amended petition is denied.

## PROCEDURAL AND FACTUAL BACKGROUND

In 1981, Petitioner faced murder and rape charges in the Circuit Court of Cook County, Illinois. His case was assigned to Judge Thomas Maloney. Petitioner had a history of suicide attempts and had received mental health treatment.

### A. Petitioner's Mental History

On January 2, 1980, a Wisconsin state court ordered Petitioner committed to Central State Hospital in Waupun, Wisconsin for "specialized treatment" for "mental (and physical) aberrations as to sexual matters" and concluded that Petitioner was "in need of specialized treatment." During his commitment, Petitioner attempted suicide numerous times. At various times, Petitioner was restrained and tube fed.

On August 26, 1981, at the request of Petitioner's counsel, Judge Maloney ordered a clinical behavioral examination of Petitioner. On September 9, 1981, a psychiatrist at Prison Health Services diagnosed Petitioner with schizophrenia. Petitioner was then placed on navane, an anti-psychotic drug.

On September 14, 1981, Dr. Gerson Kaplan of the Psychiatric Institute examined Petitioner. Dr. Kaplan knew of Petitioner's history of mental illness and repeated suicide attempts. On September 15, 1981, Dr. Kaplan sent a letter to Judge Maloney opining that Petitioner was mentally fit for trial. Specifically, Dr. Kaplan concluded Petitioner was "Mentally Fit for trial. He understands the nature of the charge pending against him, the purpose of the proceedings and is able to cooperate with counsel in his defense." On October 8, 1981, Judge Maloney found Petitioner fit for trial.

On November 18, 1981, Petitioner again attempted suicide by trying to hang himself. Two days later, on November 20, 1981, Petitioner pled guilty to three counts of murder and one count of rape in the Circuit Court of Cook County. Petitioner's counsel did not request, and the judge did not order, a competency hearing prior to the plea. The judge sentenced him to seventy years' imprisonment on each of the three counts of murder and thirty years on the one count of rape, and ordered that he serve the sentences concurrently. Petitioner did not appeal his convictions to the Illinois Appellate Court.

**B.   Petitions for Relief**

On March 22, 1989, after several years spent in unsuccessful pursuit of a complete record from the trial court, Petitioner filed a petition for post-conviction relief in the Circuit Court of

Cook County. On October 24, 1995, after several years of apparent inattention and inactivity, the Circuit Court finally denied the petition.

Petitioner appealed to the Illinois Appellate Court. On February 23, 1996, the Public Defender of Cook County filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The Public Defender argued that the petition for post-conviction relief failed to allege facts that gave rise to a claim of constitutional deprivation at trial. Petitioner filed a twenty-page *pro se* response to that motion. On May 24, 1996, the Illinois Appellate Court granted the motion to withdraw and affirmed the Circuit Court's denial of post conviction relief. In a cursory opinion, the Appellate Court stated: "We have reviewed the record in the case, defendant's lengthy *pro se* response and the aforesaid brief in compliance with *Finley*, and we find no issues of arguable merit. Therefore, the motion of the public defender for leave to withdraw as counsel is allowed, and the judgment of the circuit court is affirmed." (*See* R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 1, *Illinois v. Dalton*, No. 1-96-0212, slip. op. at p. 2 (Ill. App. Ct. May 24, 1996).)

Petitioner thereafter sought leave to appeal to the Illinois Supreme Court. On December 4, 1996, the Illinois Supreme Court denied leave to appeal.

On April 4, 1997, Petitioner filed a *pro se* petition for a writ of habeas corpus. Judge Gottschall appointed counsel to represent Petitioner, and on November 16, 1998, Petitioner filed an amended petition. On July 11, 1999, this case was reassigned to the Honorable William Hibbler, and on August 30, 2002, the case was reassigned to this Court.

3

**LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "habeas relief shall not be granted unless the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding.'" *Schaff v. Snyder*, 190 F.3d 513, 521 (7th Cir. 1999) (quoting 28 U.S.C. § 2254(d)(1)). *See also Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405, 120 S.Ct. at 1519.

In order to satisfy the "unreasonable application" prong under Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams*, 529 U.S. at 407, 120 S.Ct. at 1520. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade*, --- U.S. ---, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003) (an unreasonable application is more than simply an incorrect or erroneous decision). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz v. Page*,

4

313 F.3d 1010, 1015 (7th Cir. 2002) (state court decision must be minimally consistent with facts and circumstances of the case).

Petitioner raises three claims in his amended petition: (1) that his due process rights were violated by the trial court's failure to examine his competency prior to the entry of the guilty plea; (2) that his due process rights were violated by entry of the guilty plea where his plea was not knowingly and voluntarily entered; and (3) that he received ineffective assistance of trial counsel.

## ANALYSIS

### I. Competency to Plead Guilty

Petitioner contends that the Circuit Court violated his due process rights by failing to conduct a competency hearing prior to accepting Petitioner's guilty plea. He argues that his questionable mental health and suicide attempts, including his November 18, 1981 suicide attempt, demonstrate that he was not competent to plead guilty.

The Due Process Clause requires that a criminal defendant be competent to stand trial or plead guilty. *See Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S.Ct. 896, 903-04, 43 L.Ed.2d 103 (1975) ("[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").

In assessing whether a defendant is competent to plead guilty, the Court must determine that the defendant has "sufficient present ability to consult with his lawyer with a reasonable

5

degree of rational understanding" and that he has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396-98, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993) (citations and quotations omitted). *See also United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1011 (7th Cir. 1984) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges."). The trial court must hold a competency hearing when the information at the time of the plea hearing is sufficient to raise a "bona fide doubt" regarding the defendant's competency. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966). *See also DeRobertis*, 741 F.2d at 1012 ("[P]etitioner was entitled to a hearing on his competency if he raised a bona fide doubt about his ability to consult with his attorney or his understanding of the charges against him.").

The determination whether a bona fide doubt exists as to a defendant's competency should be based on "evidence of [his] irrational behavior, his demeanor at trial, and any prior medical opinion." *Drope*, 420 U.S. at 180, 95 S.Ct. at 908. Significantly, as the Seventh Circuit has noted, the "review of the court's decision that no bona fide doubt existed as to petitioner's competency is limited to consideration of the evidence before the court at the time of the decision. Facts coming to light at a later time cannot retroactively invalidate the court's decision." *DeRobertis* 741 F.2d at 1011 (citations omitted). Furthermore, this Court presumes the trial court's factual finding of competence to plead guilty is correct. *Balfour v. Haws*, 892 F.2d 556, 560 (7th Cir. 1989).

To determine whether a retrospective competency hearing is necessary, the Seventh Circuit has laid out the following analysis:

> A habeas petitioner must first present substantial facts to support allegations that he was not competent to stand trial. Substantial facts are facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during the trial. If the petitioner presents substantial facts and shows that the state court provided inadequate procedures, he has satisfied his burden.

*Galowski v. Berge*, 78 F.3d 1176, 1181 (7th Cir. 1996) (citations omitted).

In this case, Petitioner has failed to provide "substantial facts" supporting his contention that he was not competent to plead guilty. Petitioner has not provided any contemporaneous psychiatric opinions or evaluations suggesting that he was not competent. Nor has Petitioner presented any evidence that his behavior at the time of plea was irrational, erratic or uncontrolled, which might have prompted Judge Maloney to reconsider the competency issue. Instead, Petitioner's only evidence is the fact that he attempted suicide on November 18, 1981, two days before he plead guilty.

Standing alone, however, Petitioner's November 18 suicide attempt is not sufficient to demonstrate that he lacked the competence to plead guilty. Significantly, Petitioner had a history of suicide attempts prior to November 18, and both Dr. Kaplan and Judge Maloney were aware of this history when they concluded that he was competent to stand trial. Thus, even assuming that Judge Maloney was unaware of Petitioner's November 18 suicide attempt, there is no evidence that this latest attempt would have altered his assessment of Petitioner's competency or otherwise created a bona fide doubt concerning Petitioner's competency.

7

The Seventh Circuit rejected a habeas claim like this one in *United States ex rel. Heral v. Franzen*, 667 F.2d 633 (7th Cir. 1981). The petitioner in that case, Carrie Jean Heral, also had a history of suicide attempts. *Id.* at 634-35. Despite this history, psychiatrists concluded that Heral was competent, and at a hearing on September 7, 1972, a jury found her competent to stand trial. *Id.* at 635. Subsequently, on December 3, 1972, Heral attempted suicide yet again. *Id.* No one informed the trial court of Heral's December 3 suicide attempt, and the trial court accepted Heral's guilty plea just four days later on December 7, 1972. *Id.*

In her habeas petition, Heral argued that she had received ineffective assistance of counsel because her attorney had failed to re-raise the competency issue before allowing her to plead guilty. Specifically, Heral argued that the December 3 suicide attempt was "further evidence of her incompetency to stand trial, which would have caused the judge to reopen the competence issue." *Heral*, 667 F.2d at 636. The Seventh Circuit rejected this assertion and affirmed the denial of habeas relief, reasoning that knowledge of the December 3 suicide attempt would not have affected the trial court's assessment of Heral's competency:

> Although Heral characterizes her latest suicide attempt as crucial evidence of her incompetence to stand trial, the record indicates that Heral's suicidal tendencies had been thoroughly examined. The psychiatric reports on Heral indicated that she had attempted suicide many times in the past, including two attempts while awaiting trial for murder. Nevertheless, these reports had repeatedly stated that Heral was competent to stand trial, and a jury had so determined at a competency hearing. It is unlikely that evidence of yet another attempted suicide, in a long series of such attempts, would have convinced the judge of Heral's incompetence.

*Id. See also Drope*, 420 U.S. at 181 n.16, 95 S.Ct. at 908 n.16 ("[A] suicide attempt need not always signal 'an inability to perceive reality accurately, to reason logically and to make plans

8

and carry them out in organized fashion.'") (quoting Greenberg, *Involuntary Psychiatric Commitments to Prevent Suicide*, 49 N.Y.U.L.Rev. 227, 236 (1974)); *Hastings v. Yukins*, 194 F.Supp.2d 659, 671-72 (E.D. Mich. 2002) ("Not every suicide attempt, however, will create a bona fide doubt concerning a defendant's competency to stand trial.").

As in Heral's case, Petitioner's November 18 suicide attempt was merely the latest in a series of suicide attempts, of which Judge Maloney and Dr. Kaplan well aware. Therefore, the November 18 suicide attempt, standing alone, does not constitute "substantial facts" that "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to" Petitioner's competency.

## II. Knowing and Voluntary Guilty Plea

Petitioner argues that he did not plead guilty knowingly and voluntarily because Judge Maloney did not properly advise him of the possibility of an "extended term" sentence. The Respondent contends that Petitioner procedurally defaulted this claim because he failed to raise it with the Illinois courts. Petitioner's state court habeas petition does refer to Judge Maloney's alleged failure to discuss an extended term sentence, but the parties dispute whether the state court habeas petition was sufficient to preserve the issue.

A petitioner procedurally defaults on a constitutional claim by failing to present that claim to the highest state court to which he may appeal it in the manner required by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) ("[S]state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) ("Federal habeas relief is available

only when a petitioner has given the state courts a full and fair opportunity to review a claim."). A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law. *See Coleman v. Thompson*, 501 U.S. 722, 749-50, 111 S.Ct. 2546, 2564-65, 115 L.Ed.2d 640 (1991). The Court may also reach the merits of a defaulted habeas claim if the petitioner can demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Id. See also Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995) (The courts will review previously waived issues only in "'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'").

The full and fair presentment of a claim requires that a petitioner present both the operative facts and controlling legal principles to the state court. *See Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). Factors relevant to whether a habeas petitioner has fairly presented a claim to the state courts include whether petitioner's state court argument: (1) relied on federal cases engaging in a constitutional analysis; (2) relied on state cases applying a constitutional analysis to similar facts; (3) asserted a claim in particular terms calling to mind a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). The presence of any of the above factors does not automatically avoid procedural default, however, and the courts must carefully consider the specific facts of each case. *See Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996).

Petitioner clearly raised Judge Maloney's alleged failure to warn him of the possibility of an extended term sentence in the habeas petition he filed in the Circuit Court of Cook County.

10

Petitioner's motion for summary judgment argued that "[a]t the time of the alleged plea, [Petitioner] was not told he was subject to an extended term sentence." (*See* R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 3 at p. 1.) Further, Petitioner supported this argument with citation to relevant authority. (*Id.*, Exh. 3 at p. 2.) Likewise, Petitioner raised the extended term sentence with the Illinois Appellate Court. In his opposition to the Public Defender's *Finley* motion, Petitioner claimed that he understood that he "would get forty years for murder, 30 years for rape, so it would total 70 years, but the sentence was run together, which meant only forty years . . . The Judge did not tell [him] that [he] was going to get an extended term . . . " (*Id.*, Exh. 4 at App. 17, p. 2.)

Moreover, the Illinois Appellate Court implicitly considered Petitioner's claim on the merits because the court "reviewed the record in the case" and found that the appeal presented "no issues of arguable merit." (*See* R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 1, *Illinois v. Dalton*, No. 1-96-0212, slip. op. at p. 2 (Ill. App. Ct. May 24, 1996).) Therefore, this Court finds that Petitioner's claim is not procedurally defaulted and proceeds to examine the merits. *See Wilkinson v. Cowan*, 231 F.3d 347, 350-52 (7th Cir. 2000) ("What matters is that [the petitioner] made the claim in his post-conviction petition, that the appellate court undertook a 'careful review' of the record . . . and affirmed the dismissal of his petition."); *United States ex rel. Howard v. DeTella*, 91 F.3d 146 (Table); 1996 WL 405212, at *1 (7th Cir. July 16, 1996) (state appellate court's determination that an appeal presents "no issues of arguable merits" must be interpreted as a decision on the merits).[1]

---

[1] There is some tension between *Wilkinson*, which addresses cases where a state appellate court has "reviewed the record" and "found no issues of arguable merit," *id.*, 231 F.3d at 350-52, and the Seventh Circuit's cases interpreting the "full and fair presentment" requirement. *See, e.g.*,

11

The United States Supreme Court has held that, to be valid, a guilty plea must be voluntarily and intelligently made. *See, e.g., Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468-69, 25 L.Ed.2d 747 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.*, 397 U.S. at 748, 90 S.Ct. 1463, at 1468-69. *See also Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."). The determination of whether a plea was voluntarily, knowingly, and intelligently made depends upon the particular facts and circumstances of each case. *See Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461 (1930).

Courts have allowed habeas relief where the trial court gave the defendant incorrect information concerning the maximum potential sentence before allowing the defendant to plead guilty. *See, e.g., Hart v. Marion Correctional Inst.*, 927 F.2d 256, 259 (6th Cir. 1991) ("[B]ecause [the defendant] was incorrectly informed of the possible term of incarceration before the plea was entered, his plea was not entered with a sufficient awareness of the relevant circumstances and likely consequences.") (quotation omitted); *Pitts v. United States*, 763 F.2d

---

*Chambers*, 264 F.3d at 737-38. That tension may be explained by the special circumstances in *Wilkinson*, where the petitioner did not have a true opportunity to fully brief his habeas petition on appeal because the Illinois Appellate Court disposed of the petition in the context of the motion by the petitioner's attorney to withdraw as counsel. *See Wilkinson*, 231 F.3d at 350-51 ("Had the appeal proceeded to briefing on the merits, [the petitioner] (or his attorney) of course would have been obliged to develop the basis for his ineffectiveness claim and thus to give the appellate court an adequate opportunity to evaluate the merits of that claim."). The Court notes that it need not resolve this tension because it concludes that Petitioner here has not procedurally defaulted on the knowing and voluntary plea issue under either standard.

12

197, 200-01 (6th Cir. 1985) (allowing habeas relief where both court and counsel misled petitioner as to possible range of sentences).

Petitioner contends that his case is analogous to *Hart* because Judge Maloney failed to inform him of the maximum potential sentence before allowing him to plead guilty. In *Hart*, the Sixth Circuit granted habeas relief to petitioner Daryl Lee Hart because the record confirmed that the trial court ***affirmatively misrepresented*** the maximum potential penalty before accepting Hart's guilty plead. *Hart*, 927 F.2d at 259 ("The record shows Hart was incorrectly informed by . . . the trial judge that his maximum period of incarceration would be 15 years. Only after Hart entered his plea was he made aware of the 30 to 75 year sentence . . . "). *See also Pitts*, 763 F.2d at 201 ("[This case] involves ***affirmative misstatements*** of the maximum possible sentence. Numerous cases have held that misunderstandings of this nature invalidate a guilty plea.") (emphasis added).

Here, unlike in *Hart* (or in *Pitts*), Petitioner does not suggest that the trial court court affirmatively misled him about his potential maximum sentence. Instead, Petitioner contends simply that Judge Maloney did not warn him of the possibility of an extended sentence. (*See* R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 3 at p. 1 ("At the time of the alleged plea, [Petitioner] was not told he was subject to an extended term sentence.").) The courts have suggested that such a claim for mere failure to provide sentencing information -- as opposed to a claim that the court provided inaccurate or mistaken sentencing information -- may not invalidate a guilty plea. *See Pitts*, 763 F.2d at 201 ("We stress that this case does not involve a mere failure to give a defendant some information which he later claims would have affected his pleading decision.").

13

In addition, the Court notes that Petitioner has not demonstrated that Judge Maloney and counsel failed to warn him about the possibility of an extended sentence. Petitioner's only "evidence" consists of his own self-serving statements that no one told him about the possibility of an extended sentence. (*See, e.g.*, R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 3 at p. 1.) To be sure, Petitioner is hampered because the record from the trial court is practically non-existent, but the lack of a proper record would not have precluded affidavits from others who witnessed his guilty plea, including defense counsel, court officials, and family.[2]

Moreover, if Judge Maloney and counsel failed to warn him about the possibility of an extended term sentence, why didn't Petitioner file an immediate direct appeal of his sentence and why did he wait nearly eight years to file his state court petition for a writ of habeas corpus? (The inability to obtain a complete court record cannot explain the entire delay.) Standing alone, Petitioner's self-serving statements do not establish that Judge Maloney failed to inform Petitioner of the potential maximum sentence.

### III. Ineffective Assistance of Counsel

Petitioner argues that he was denied effective assistance from counsel because his attorney failed to request a competency hearing after Petitioner's November 18 suicide attempt and before his November 20 guilty plea. Respondent contends that Petitioner has procedurally defaulted on this issue and that, therefore, the Court cannot consider the merits of this claim.

---

[2] Petitioner cites a 1996 affidavit from his mother Dalia Dalton where she states that "the only thing [I] know for sure was no one said anything about a [sic] extended term for my son." (*See, e.g.*, R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 5, App. 17.) Ms. Dalton's affidavit, however, fails to explain how she "know[s]" that. The affidavit does not explain, for example, whether she was present for Petitioner's guilty plea, whether she heard what Judge Maloney said to Petitioner, whether she was privy to Petitioner's conferences with counsel, or whether Petitioner simply relayed this claim to her. Thus, the affidavit has little probative value.

14

As discussed above, a petitioner avoids procedural default by presenting his habeas claim to the highest state court to which he may appeal it in the manner required by state law. *See O'Sullivan*, 526 U.S. at 845, 119 S.Ct. at 1732. The full and fair presentment of a claim requires that a petitioner present both the operative facts and controlling legal principles to the state court. *See Chambers*, 264 F.3d at 737-38. Alternatively, (*see* Section II and n.1, *supra*), a petitioner may avoid procedural default where the state appellate court considers the petitioner's claim on the merits. *See Wilkinson*, 231 F.3d at 350-52 ("What matters is that [the petitioner] made the claim in his post-conviction petition, that the appellate court undertook a 'careful review' of the record . . . and affirmed the dismissal of his petition.").

Although he failed to raise it in his original post-conviction petition, Petitioner did argue his ineffective assistance of counsel claim in the Illinois Appellate Court. Specifically, in Petitioner's *pro se* response to the motion filed by his attorney to withdraw as counsel, Petitioner argued that he received ineffective assistance from counsel because his attorney failed to request a competency hearing after the November 18, 1981 suicide attempt. (*See* R. 91-1, Exhibits to Reply in Support of Habeas, Exh. 4 at p. 13.) The Illinois Appellate Court implicitly considered Petitioner's claim on the merits because the court "reviewed the record in the case" and found that the appeal presented "no issues of arguable merit." (*Id.*, Exh. 1, *Illinois v. Dalton*, No. 1-96-0212, slip. op. at p. 2 (Ill. App. Ct. May 24, 1996).) Thus, Petitioner has not procedurally

15

defaulted on his ineffective assistance of counsel claim. *See Wilkinson*, 231 F.3d at 350-52; *Howard*, 1996 WL 405212, at *1.[3]

In order to prevail on his ineffective assistance of counsel claim, Petitioner must satisfy the mandates of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Petitioner must demonstrate (1) that his counsel's performance was objectively deficient, and (2) that his counsel's deficient performance caused him to be prejudiced. *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. Under the performance prong, Petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Under the prejudice prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Even assuming that he can show that his counsel's failure to request a competency hearing after the November 18, 1981 suicide attempt was objectively unreasonable, Petitioner's ineffective assistance of counsel claim fails because he cannot demonstrate that the failure to request such a hearing would have had any impact. As noted before, Petitioner had a history of suicide attempts prior to November 18, and both Dr. Kaplan and Judge Maloney were aware of this history when they concluded that he was competent to stand trial. Even if Petitioner's

---

[3] Petitioner also asserts that he received ineffective assistance from counsel because his attorney failed to warn him about the possibility of an extended term sentence. Unlike his other ineffective assistance of counsel claim, this argument appears nowhere in Petitioner's original state court habeas petition or in his *pro se* response to the motion filed by his attorney to withdraw as counsel. Petitioner has, therefore, procedurally defaulted on this argument.

16

counsel had requested another competency hearing after the November 18 suicide attempt, there is no evidence that this latest attempt would have altered Judge Maloney's assessment of Petitioner's competency.

Again, the Seventh Circuit's analysis in *United States ex rel. Heral v. Franzen*, is instructive. In that case, the trial court found the petitioner, Carrie Jean Heral, competent despite her history of suicide attempts. *Id.*, 667 F.2d at 634-35. In her habeas petition, Heral argued that she had received ineffective assistance from counsel because her attorney failed to request a new competency hearing after Heral again tried to commit suicide just days before her scheduled plea. *Id.* at 636. The Seventh Circuit affirmed the denial of Heral's habeas claim, noting that "[i]t is unlikely that evidence of yet another attempted suicide, in a long series of such attempts, would have convinced the judge of Heral's incompetence." *Id.*

So, too, here, it is unlikely that Petitioner's November 18 attempted suicide, which was merely the latest in a series of suicide attempts, would have swayed Judge Maloney's determination that Petitioner was competent.[4]

---

[4] Petitioner has also requested, in the alternative to immediate relief, leave to conduct discovery on his ineffective assistance of counsel claim. Because the Court concludes that Petitioner cannot show that he was prejudiced by his counsel's failure to request a competency hearing, Petitioner's request for discovery is denied.

17

## CONCLUSION

For these reasons, Petitioner's amended petition for a writ of habeas corpus is denied.

Dated: September 5, 2003

ENTERED

_____
AMY J. ST. EVE
United States District Judge