**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LAWRENCE DALTON,                                  )
                                                 )
                      Petitioner,                )
          v.                                     )          No. 97 C 2368
                                                 )
JUDY SMITH,[1] Warden, Oshkosh Correctional      )
Institution, and LISA MADIGAN,                   )
Attorney General of Illinois,                    )
                                                 )
                      Respondents.               )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On September 5, 2003, the Court denied Petitioner Lawrence Dalton's habeas petition

brought under 28 U.S.C. § 2254. In his habeas petition, Dalton brought three constitutional

claims, including that (1) he was not mentally competent to plead guilty, (2) his trial counsel

provided constitutionally ineffective assistance of counsel, and (3) he did not knowingly and

voluntarily give his guilty plea because the state court judge did not advise him of the possibility

of an extended term sentence under Illinois law. The Court denied Dalton's claims for habeas

relief, but granted his request for a certificate of appealability as to his claim that he did not

knowingly and voluntarily plead guilty. *See* 28 U.S.C. § 2253(c)(2). On appeal, the Seventh

Circuit only considered the merits of Dalton's claim that he did not knowingly and voluntarily

plead guilty and vacated the Court's order concerning that claim. The Seventh Circuit then

remanded the case for the Court to conduct an "evidentiary hearing on whether Petitioner

---

[1] Habeas petitioner Lawrence Dalton is currently incarcerated at the Oshkosh
Correctional Institution in Oshkosh, Wisconsin. Judy Smith is the Warden at Oshkosh
Correctional Institution, and thus is a proper Respondent in this habeas action. *See* Rule 2(a) of
the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254.

Lawrence Dalton knew that he was eligible for an extended term sentence when he pleaded guilty." *Dalton v. Battaglia*, 402 F.3d 729, 739 (7th Cir. 2005). On November 17, 2005, the Court held that hearing.

## BACKGROUND

### I. Dalton's State Court Convictions

Prior to his Illinois convictions, a Wisconsin jury convicted Dalton of first-degree murder, kidnaping by deceit, and second-degree sexual assault. The trial court sentenced him to life in prison for the murder count and fifteen years imprisonment for the kidnaping count to be served consecutively. *See State v. Dalton*, 98 Wis.2d 725, 298 N.W.2d 398 (Wis.Ct.App. 1980).

After his Wisconsin conviction, Dalton faced murder and rape charges in the Circuit Court of Cook County, Illinois. On August 23, 1981, two days after arriving in Illinois from Wisconsin, Dalton attempted suicide and was admitted to Cermak Hospital of Cook County. At the request of Dalton's defense counsel, Gerald Maupin, the presiding Cook County judge, Thomas Maloney,[2] ordered a clinical behavioral examination of Dalton. On September 9, 1981, a prison health services psychiatrist diagnosed Dalton with "schizophrenia paranoid type in remission" and placed him on an anti-psychotic drug. Also, Dr. Gerson Kaplan of the Psychiatric Institute examined Dalton and deemed him mentally fit for trial. On October 8, 1981, Judge Maloney found Dalton fit to stand trial.

---

[2] The Court takes judicial notice under Federal Rule of Evidence 201(b) that in 1993, federal prosecutors convicted Judge Maloney of conspiracy, racketeering, extortion, and obstructing justice through "Operation Greylord," a federal investigation into judicial corruption in the Circuit Court of Cook County, Illinois. *See Bracy v. Gramley,* 520 U.S. 899, 901-02, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); *United States v. Maloney*, 71 F.3d 645, 651-52 (7th Cir. 1995).

On November 18, 1981, Dalton attempted to commit suicide. On November 20, 1981, Dalton pleaded guilty to three counts of murder and one count of rape. Judge Maloney then sentenced Dalton to an extended term sentence of 70 years' imprisonment for the three murder counts, thirty years on the rape count, and ordered that Dalton serve the sentences concurrently. *See* 730 ILCS 5/5-8-2 (authorizing terms of imprisonment in excess of maximum sentence provided by statute if factors in aggravation present). Judge Maloney also ordered that Dalton serve his Illinois sentences concurrently with his Wisconsin sentences.

## II. Dalton's Illinois Post-Conviction Petition

Dalton did not directly appeal his convictions and sentences to the Illinois Appellate Court. Instead, eight years after his conviction in 1989, Dalton filed a petition pursuant to the Illinois Post-Conviction Hearing Act in the Circuit Court of Cook County. *See* 725 ILCS 5/122-1 *et seq.* In his post-conviction petition, Dalton argued that his Illinois convictions should be vacated because he did not knowingly and voluntarily waive his rights when he pleaded guilty as he was under the influence of medication, and thus did not understand the nature of the proceedings. Meanwhile, throughout this time period, Dalton repeatedly attempted to obtain a copy of his state court record, including the transcript of his plea hearing. In a letter dated February 2, 1992, the Office of the Official Court Reporters of the Circuit Court of Cook County informed Dalton that the State could not locate his plea hearing transcript. Because the plea hearing transcript is unavailable, there is no official state court record of the exchange between Dalton, his defense counsel, and Judge Maloney when Dalton pleaded guilty.

In 1995, while his post-conviction petition was still pending, Dalton filed a self-styled motion for summary judgment in support of his post-conviction petition. At that time, Dalton

explained that because his plea hearing transcript was missing, there was no record to show that Judge Mahoney informed him of the possibility of an extended term sentence, and thus his sentence for the three counts of murder should be reduced from 70 to 40 years.

On October 24, 1995, the Circuit Court of Cook County denied Dalton's post-conviction petition because Dalton failed to demonstrate a deprivation of a constitutional right. The Circuit Court noted that it was disturbed by Dalton's missing plea hearing transcript. Nevertheless, the post-conviction court concluded that Dalton entered his guilty plea knowingly and voluntarily.

Thereafter, Dalton appealed the denial of his post-conviction petition to the Illinois Appellate Court. The Appellate Court appointed a public defender to represent Dalton. Dalton's post-conviction appellate counsel, however, filed a motion for leave to withdraw pursuant to *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Thereafter, Dalton filed a *pro se* response to the motion to withdraw. The Illinois Appellate Court summarily rejected Dalton's petition and granted counsel's *Finley* motion, stating: "We have reviewed the record in the case, defendant's lengthy *pro se* response and the aforesaid brief in compliance with *Finley*, and we find no issues of arguable merit." On December 4, 1996, the Illinois Supreme Court denied Dalton's petition for leave to appeal.

**III.    Dalton's Habeas Petition**

Dalton filed his initial habeas petition in federal court on April 3, 1997, and the district court appointed counsel. Dalton filed the present amended habeas petition on November 16, 1998. On August 30, 2002, Dalton's habeas petition was reassigned to this Court. Dalton brought several constitutional claims in his habeas petition, including two issues not presently before the Court – Dalton's ineffective assistance of counsel claim and his mental competency

claim.  Relevant to this remand is Dalton's claim that Judge Maloney violated his due process

rights when he failed to advise Dalton of the possibility of an extended term sentence, and thus

Dalton did not enter his guilty plea knowingly and voluntarily.  The Court rejected Dalton's

habeas claims, but granted Dalton's request for a certificate of appealability with respect to his

due process claim.  *See* 28 U.S.C. § 2253(c)(2).

## IV.     Appeal to the Seventh Circuit

On appeal, Dalton requested that the Seventh Circuit expand his certificate of

appealability to include his claim that his trial attorney's failure to request a competency hearing

after his November 18, 1981 suicide attempt and before his November 20, 1981 guilty plea

denied him effective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The Seventh Circuit denied Dalton's request because

Dalton's trial attorney had requested an examination of Dalton shortly before the November 18,

1981 suicide attempt.  *Dalton*, 402 F.3d at 738-39.  The Seventh Circuit thus concluded that

"there is nothing in the record to suggest that the circuit court might have altered its competency

determination if it had been aware of Dalton's most recent suicide attempt, given its familiarity

with his extensive history of such attempts." *Id*. at 739.

The Seventh Circuit also vacated the Court's denial of Dalton's habeas petition as to

Dalton's claim that Judge Maloney violated his due process rights when he failed to advise him

of the possibility of an extended term.  The Seventh Circuit remanded this claim for an

evidentiary hearing to determine "whether Dalton knew, through communications with either his

counsel or Judge Maloney, that he was eligible for an extended term sentence under Illinois law

when he pleaded guilty."  *Id*. at 737.

## V.    Evidentiary Hearing

Pursuant to the Seventh Circuit's remand, the Court held an evidentiary hearing on November 17, 2005.  At the hearing, Respondents presented the testimony of Lawrence Hyman, the Assistant Cook County States' Attorney who prosecuted Dalton, and Gerald Maupin, Dalton's defense attorney.  In addition to the witness testimony, the Court admitted into evidence Respondents' exhibits, including the "blue back," "pen letter," docket sheets, and order of sentence and commitment in *People v. Dalton* (81-C-3113), among other documents.  Dalton also testified at the hearing.  The Court admitted into evidence Dalton's exhibits, including two affidavits of Dalton's deceased mother and a letter Dalton wrote to his defense counsel.

## **HABEAS STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Bell v. Cone,* ___ U.S. ___, 125 S.Ct. 847, 951, 160 L.Ed.2d 881 (2005).  Normally, a state court's factual findings are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1);  *Miller-El v. Dretke,* ___ U.S. ___, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005).  In addition, a presumption of regularity attaches to final state court judgments. *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

Here, the Seventh Circuit suspended the presumption of regularity due to the missing plea hearing transcript and the destruction of Dalton's state court record prior to the time when the Illinois Appellate Court had a chance to review the denial of Dalton's post-conviction

petition. *See Dalton,* 402 F.3d at 736. As such, the Seventh Circuit concluded that "any assessment of Dalton's knowledge of his eligibility for an extended sentence at the time of his plea must be made based on actual evidence in the record." *Id.*

## BURDEN OF PROOF

A habeas petitioner bears the burden of establishing that the state court applied federal constitutional law to the facts of his case in an objectively unreasonable manner. *See Woodford v. Visciotti,* 537 U.S. 19, 24- 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)*; Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) ("habeas applicant has the burden of proof to show that the application of federal law was unreasonable"). When the presumption of regularity is suspended, a habeas petitioner has the burden of sustaining his allegations at an evidentiary hearing by the preponderance of the evidence. *Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941). In the context of an evidentiary hearing in a habeas corpus proceeding challenging the voluntariness of a guilty plea, the Seventh Circuit has articulated that "once the petitioner demonstrates a prima facie case of the constitutional violation, the burden shifts to the State to show the voluntariness of the plea." *Grundset v. Franzen,* 675 F.2d 870, 878 (7th Cir. 1982) (allocation of burden consistent with constitutional requirement that waiver cannot be presumed from silent record) (citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).

Here, Dalton contends that in remanding this matter, the Seventh Circuit has already determined that he made a prima facie case of a constitutional violation. The Seventh Circuit, however, unequivocally stated: "On the record as it stands, unfortunately, there is no way for this court or any other court rationally to determine whether Dalton's constitutional right to due

process was violated in this way." *Dalton*, 402 F.3d at 734; *see also Grundset,* 675 F.2d at 877

(failure to provide plea hearing transcript does not, in itself, establish constitutional violation).

Based on the Seventh Circuit's analysis, the *Dalton* Court did not conclude that Dalton set forth

sufficient evidence to establish a prima facie case of a violation of his due process rights.

Therefore, Dalton has the initial burden of proof. *See Grundset,* 675 F.2d at 878.

## ANALYSIS

The Court must now answer the narrow question of "whether Dalton knew, through

communications with either his counsel or Judge Maloney, that he was eligible for an extended

term sentence under Illinois law when he pleaded guilty." *Dalton*, 402 F.3d at 737. The Court

finds that he did.

## I.      Findings of Fact

The Court makes the following findings of fact based on the testimonial and documentary

evidence presented at the evidentiary hearing on November 17, 2005. Moreover, the Court

makes these findings based on its assessment of the witnesses' credibility after considering the

evidence presented at the hearing and carefully observing the demeanor of each witness –

including the witness' tone of voice and facial expressions – as he testified. The Court

recognizes that the relevant events took place in 1981 and takes the passage of time into

consideration when making its determinations.

### A.      Lawrence Hyman's Hearing Testimony

Lawrence Hyman, the Assistant Cook County States' Attorney ("ASA") who prosecuted

Dalton, testified at the evidentiary hearing. (Evidentiary Hr'g Tr. at 98.)  Presently, Hyman is

an attorney in private practice. (*Id*. at 96.) At the time of Dalton's guilty plea, Hyman had been

an ASA for approximately six years and had worked in Judge Maloney's courtroom for a five-month period earlier in his career as an ASA. (*Id.* at 97, 116.) Hyman testified that although he was a supervisory attorney in felony review at the time of Dalton's prosecution, he took Dalton's case because Chicago Police Detective Lawrence Flood asked him to work on it. (*Id.* at 97-100.) Hyman specifically remembered Dalton's case because it was only one of two "special assignments" he prosecuted while he was a supervising attorney in felony review. (*Id.* at 99.) Hyman also remembered Dalton's case because of the relevant facts, namely, after Dalton had murdered the victim, he placed her in a steamer trunk and buried her behind a false wall. (*Id.* at 143.)

At the evidentiary hearing, Hyman identified the "blue back" on which he contemporaneously recorded the events of Dalton's pretrial conference and Dalton's guilty plea on November 20, 1981. (*Id.* at 103, 125; Resp't Ex. 10.) Hyman testified that ASAs regularly create and maintain blue backs to record the disposition of various court dates in pending felony cases. (Evidentiary Hr'g Tr. at 103.) Hyman then explained the notes he took in his blue back on November 20, 1981. (*Id.* at 105.) He testified that defense counsel requested a pretrial conference pursuant to Illinois Supreme Court Rule 402 (*see id*. at 109), which is a conference that permits Illinois state judges to participate in plea discussions. *See Gardner v. Meyer,* 519 F.Supp. 75, 83 n.4 (N.D. Ill. 1981). Judge Maloney conducted the conference with defense counsel Maupin and ASA Hyman in chambers. (*Id.* at 110.) Dalton was not present. (*Id.*) At the conference, Hyman presented the State's position, including the factual bases of the crimes and that Dalton was eligible for the death penalty based on the Cook County charges and his prior Wisconsin convictions. (*Id.*) Consistent with the policy of the Cook County States'

Attorney at that time, the State took no position regarding the sentencing recommendation. (*Id.* at 110-11.) Hyman's blue back reflected – and Hyman testified – that pursuant to the plea agreement Judge Maloney would sentence Dalton to 70 years for the three murder counts to run concurrent with a 30 year sentence for the Cook County rape charge. (*Id.* at 111-12.) The blue back also indicated that Dalton faced a 30 year sentence in a Lake County, Illinois rape case. (*Id.* at 112.)

Further, Hyman testified that following the Rule 402 conference, Maupin left to discuss the proposed plea agreement with Dalton who was in lockup. (*Id.* at 112.) Maupin subsequently returned from lockup and indicated to both Hyman and Judge Maloney that Dalton agreed to accept the plea offer of 70 years for the murder counts and 30 years for the rape count. (*Id.* at 112-13.) After that, Dalton was brought back into court. (*Id.* at 114.) Judge Maloney then admonished Dalton under Illinois Supreme Court Rule 402 and Dalton indicated that he wanted to plead guilty. (*Id.*) At some point, Dalton signed a jury waiver. (*Id.* at 114-15.)

Hyman testified that he presented the same factual bases for the crimes to Judge Maloney in court that he had presented at the pretrial conference. (*Id.* at 115.) In addition, Hyman testified that Maupin, on behalf of Dalton, stipulated to the State's factual basis. (*Id.*) Also, Hyman testified repeatedly that at the plea hearing Judge Maloney indicated that if Dalton were to plead guilty, the judge would sentence him to 70 years imprisonment for the three murder counts and 30 years for the rape count and that the sentences would run concurrently. (*Id.* at 111, 117, 126-27, 129.)

After discussing his blue back, Hyman testified about the "pen letter" in Dalton's case. (Resp't Ex. 11). Hyman explained that a pen letter is the official form used by the Cook County

States' Attorney's Office that is sent to the Illinois Department of Corrections ("IDOC").

(Evidentiary Hr'g Tr. at 121.) Pen letters advise the IDOC about the nature of a defendant's

offenses and sentence. (*Id.*) Hyman testified that Dalton's pen letter, which Hyman drafted after

the plea hearing, reflected that Dalton was convicted of murder and rape and was sentenced to 70

years for the three murder counts and 30 years for the rape count. (*Id.* at 122-23.) The pen letter

also stated:

> In May of 1978 Debra Sue Baker was sexually molested, abused and then killed
> by Lawrence Dalton in an apartment at 1067 West Argyle. He then hid her body
> in a trunk behind a false wall in the apartment and later took the trunk from the
> apartment and dumped it in the Fox River. The trunk was discovered on the 24th
> of May 1978, and Baker's body was unidentified for nearly one year until Dalton
> was arrested in Waukegan for Indecent Liberties of a 14 year old child.
>
> Presently Dalton is serving a life sentence in Wisconsin for the August 1977
> murder of another girl. It is the opinion of this office that Lawrence Dalton
> should serve the maximum time of his sentence for the heinous and brutal crime
> he committed in Illinois.

(Resp't Ex. 11, at 2.)

After Respondents concluded Hyman's direct examination, the Court asked Hyman a few

questions to which Respondents asked follow-up questions. At that time, Hyman testified that,

in general, if the sentence at a plea hearing differed from the offer made by the judge at the Rule

402 conference, he would have recorded the variation in his blue back. (Evidentiary Hr'g Tr. at

129.) Although he did not remember Judge Maloney's exact words, Hyman testified that he

specifically recalled Judge Maloney during the plea hearing explaining the extended sentence to

Dalton. (*Id.*)

On cross-examination, Hyman testified that he had independent recollections concerning

Dalton's plea conference and guilty plea hearing and that he was not solely relying on the blue

back when he gave his testimony. (*Id.* at 138.) During his deposition, however, Hyman testified that he was not sure if the Rule 402 conference and plea hearing occurred on the same day. (*Id.* at 138-39.) He further testified at the evidentiary hearing that he did not recall if Judge Maloney said the exact words "extended term sentence." (*Id*. at 140.)

The Court is persuaded by Hyman's testimony and is convinced of his credibility based on his sincere demeanor while testifying and the nature of his testimony. Hyman had no motive to testify to anything other than the truth, and the Court is persuaded that he was truthful. Although Hyman referred to his notes in the blue back during his hearing testimony, not only did he take these notes contemporaneously with the Rule 402 conference and subsequent plea hearing, but Hyman had independent recollections of the relevant events. Hyman admitted that he did not recall the exact words that Judge Maloney stated at Dalton's plea hearing, that is, whether Judge Maloney said the words "extended term sentence." More importantly, however, he testified that at the plea hearing Judge Maloney explained the 70 year extended sentence to him.

The documentary evidence admitted at the evidentiary hearing confirms Hyman's testimony concerning the 70 year sentence. In the pen letter, drafted by Hyman shortly after the plea hearing and sentencing, Hyman indicated that the sentence for the murder charges was 70 years and 30 years for the rape charge. The certified copy of the docket sheets maintained by the Circuit Court of Cook County shows that Dalton pleaded guilty, waived a jury, and the court found him guilty on Counts 1, 2, 3 & 5 of the indictment on November 20, 1981. (*See* Resp't Ex. 9.) The docket further shows that the court sentenced Dalton to 70 years' imprisonment on Counts 1, 2, & 3 and to 30 years' imprisonment on Count 5 of the indictment. (*Id.*) Finally, the

sentencing order shows that the state court sentenced Dalton to 70 years for the murder counts and 30 years for the rape count. (Resp't Ex. 12.)

### B. Gerald Maupin's Evidentiary Hearing Testimony

Dalton's defense attorney, Gerald Maupin, also testified at the November 17, 2005 evidentiary hearing. Based on his demeanor and the fact that his testimony was consistent with Hyman's testimony, the Court concludes that Maupin's testimony was credible and reliable. Further, the Court finds convincing Maupin's specific recollection of some of the events given Maupin's testimony that he specifically remembered Dalton's plea in the Cook County case because Dalton received the highest sentence that any client of his had received pursuant to a plea agreement. (*Id.* at 160.)

At the hearing, Maupin testified that in 1981 he exclusively practiced criminal defense law. (Evidentiary Hr'g Tr. at 151.) He explained that he represented Lawrence Dalton in a Lake County case in addition to representing him in Cook County. (*Id.* at 152.) At that time, Maupin was aware that Dalton had been convicted in Wisconsin and that a Wisconsin court had sentenced Dalton to life imprisonment. (*Id.* at 152-53.)

After Maupin took Dalton's case, he requested that Dalton be given a basic competency exam. (*Id.* at 153.) The subsequent psychological report concluded that Dalton was fit to stand trial. (*Id.*) Maupin also testified that at the time he was representing Dalton in the Cook County action he discussed with Dalton that he was eligible for the death penalty based on Dalton's prior convictions and the criminal charges in the Cook County case. (*Id.* at 153-54.)

Consistent with Hyman's testimony, Maupin testified that he requested a Rule 402 conference with Judge Maloney after having a conversation with Dalton, although Maupin does

13

not recall what was said during his conversation with Dalton.  (*Id.* at 154.)  Maupin, Hyman, Judge Maloney were at the Rule 402 conference.  (*Id*. at 155.)  During the conference, Maupin testified that Judge Maloney told him that Dalton would get 70 years if he were to plead guilty.  (*Id.* at 156-57.)  Also consistent with Hyman's testimony, Maupin stated that he had a conversation with Dalton in lockup behind the courtroom.  (*Id*. at 157.)  Although Maupin does not remember the specifics of the conversation he had with Dalton, he told Dalton that Judge Maloney had offered 70 years if he were to plead guilty.  (*Id.*)  Maupin further testified that Dalton was interested in accepting the plea agreement.  (*Id.* at 158.)

In addition, Maupin testified that it was his practice to explain to his clients the trial court's admonitions that would occur at the guilty plea hearing.  (*Id*. at 158-59.)  Specifically, Maupin stated that he would explain that the prosecutor would recite the facts and that the judge would inquire if those were the facts to which the defendant was pleading guilty.  (*Id.*)  Maupin also explained that he would then tell his clients about freely and voluntarily pleading guilty.  (*Id.* at 159.)  Further, Maupin testified that during Dalton's plea hearing, Judge Maloney went through the admonitions and Dalton then accepted the plea agreement.  (*Id.* at 160.)  Significantly, Maupin stated that after Dalton pleaded guilty, Dalton did not complain to him that he did not anticipate the 70 year sentence.  (*Id*.)

On cross-examination, Maupin explained that 40 years was the maximum for murder at that time in Illinois, but that he was not sure if he told Dalton that fact.  (*Id.* at 166.)  Further, Maupin testified that he did not recall if he told Dalton about the 30 years for the rape charge, but that 70 years was the outside number.  (*Id.*)  Maupin also testified that he did not recall whether he said "extended term sentence" to Dalton.  (*Id.* at 167.)  Maupin did testify, however,

that although he was not sure whether he characterized it to Dalton as an extended term sentence or an "add-on" sentence, the number he told Dalton was 70 years.  (*Id.*)

Furthermore, Maupin testified that Dalton did not ask him to appeal, despite Dalton's November 31, 1981 letter requesting him to do so.  (*Id.* at 172; Pet'r Ex. 5.)  The Court notes that although Dalton testified that he mailed the letter, there is no other evidence that he did so.  (*Id.* at 72.) Further, Maupin denied receiving this letter.  (Evidentiary Hr'g Tr. at 173.)  Finally, despite not recalling the exact way Judge Maloney phrased Dalton's extended term sentence, Maupin testified that Judge Maloney informed Dalton that the total sentence was to be 70 years if Dalton were to plead guilty.[3]  (*Id.* at 176-78.)

### C.    Dahlia Dalton's Affidavits

At the evidentiary hearing, the Court admitted into evidence two affidavits of Dalton's deceased mother, Dahlia Dalton.[4]  In the first affidavit presented, dated April 26, 1998, Dahlia Dalton averred "my son was not told that he would get a [sic] extended term, I know this because I was in the court room and the judge did not say anything about a [sic] extended term in court." (Pet'r Ex. 1.)  In the second affidavit, dated March 2, 1996, Dahlia Dalton stated:  "I went to the court hearing of November 20, 1981 in Judge Mahoney [sic] court room the day my son went to court, since I know very little about law I did not understand what was going on in the court

_____

[3]  Toward the end of his testimony, Maupin testified that he recalled Judge Maloney stating "40 and 30 years."  (Evidentiary Hr'g Tr. at 178.)

[4]  The Court admitted Dahlia Dalton's affidavits into evidence over Respondents' objection.  (R. 163-1.)  The Court based its ruling on Rule 7 of the Rules Governing Section 2254 Habeas Cases which allows for the parties to expand the record by submitting affidavits. Also, Dalton submitted his mother's March 2, 1996 affidavit in connection with his Illinois post-conviction petition.  *See Harris v. Estelle*, 487 F.2d 56, 58 (5th Cir. 1973) (affidavit admitted in state habeas proceedings deemed competent evidence in federal habeas action).

room, the only thing I know for sure was no one said anything about a [sic] extended term for my son, and no one said anything about the mental problems I told Mr. Maupin about." (Pet'r Ex. 2.)

Dahlia Dalton's averments are not inconsistent with Maupin and Hyman's testimony because they both testified that they did not remember whether Judge Maloney stated the exact terms "extended term sentence" when taking Dalton's guilty plea. Maupin and Hyman, however, testified that Judge Maloney advised Dalton that he would serve 70 years for the three murder counts if he pleaded guilty to the murder charges. In her affidavits, Dahlia Dalton does not aver that Judge Maloney failed to inform Dalton of the 70 year sentence for the three murder counts. In fact, she never mentioned 70 years. The Court finds this omission significant.

The Court nonetheless finds that Dahlia Dalton's affidavits are biased and unreliable. Besides the obvious bias of the mother-son relationship, Dalton testified at the evidentiary hearing that his mother was "already starting to get Alzheimer's" around the time of the April 26, 1998 affidavit. (Evidentiary Hr'g Tr. at 30.) Furthermore, on Dalton's cross-examination at the evidentiary hearing, it was revealed that the Wisconsin state court granted Dahlia Dalton immunity when she testified at his 1979 Kenosha County jury trial. (*Id.* at 55-56.) The evidence suggests that Dahlia Dalton may have helped Dalton flee to escape prosecution for the Wisconsin crimes. (*Id.*)

Accordingly, the Court gives little weight to Dahlia Dalton's averments that Judge Maloney did not discuss the possibility of an extended term sentence, especially in light of the fact that she admitted she knew little about the law and did not understand what was going on in the courtroom. Finally, the Court gives more weight to the testimonial evidence at the hearing

than to Dahlia Dalton's affidavits.  *See Owens v. Frank,* 394 F.3d 490, 498 (7th Cir. 2005)

("When the issue is one of credibility, resolution on the basis of affidavits can rarely be

conclusive.") (citation omitted).

**D.      Lawrence Dalton's Evidentiary Hearing Testimony**

Dalton also testified at the evidentiary hearing.  The Court finds that Dalton's testimony

lacked credibility based on his demeanor, including his mannerisms and the content of his

testimony.  While giving his evidentiary hearing testimony, Dalton's body and hands were

physically shaking and his voice quivered.  Based on his demeanor throughout the hearing, these

physical expressions were not mere nervousness.  Furthermore, the Court recognizes that Dalton

had a significant motivation to lie at the evidentiary hearing because if the Court were to grant

his habeas petition and remand the matter to the state court for resentencing, it is possible that

the state court would reduce his sentence by 30 years.

At the hearing, Dalton testified that Maupin was his defense attorney at the 1981 plea

hearing and that prior to coming to Illinois to face the murder and rape charges he was in Central

State Mental Hospital in Wisconsin.  (Evidentiary Hr'g Tr. at 20-21.)  He also stated that after he

tried to commit suicide in Illinois, the State placed him in a "psych ward."  (*Id.* at 21.)  Dalton

mentioned that he had seen several psychiatrists before his November 20, 1981 plea hearing.

(*Id.* at 22.)  He further testified that two doctors diagnosed him as paranoid schizophrenic and

prescribed the psychotropic drug Navane.  (*Id.* at 22-23.)  Dalton then testified that his

prescription changed before he went to his plea hearing.  (*Id.* at 23-24.)  He also stated that

Maupin was aware of his diagnosis.  (*Id.* at 23.)

Next, Dalton testified that he had a life sentence in Wisconsin and that defendants

"usually do 15 to 20 years on a life sentence if you stay out of trouble." (*Id*. at 24.) He told Maupin about this to which Maupin responded that his Illinois sentence would run concurrently to his Wisconsin sentence. (*Id.*) Dalton then testified that Judge Thomas Maloney presided over his guilty plea and from his understanding, the maximum sentence for murder in Illinois was 40 years' imprisonment. (*Id*. at 25-26.) Specifically, Dalton stated that when Maupin came back to lockup from Judge Maloney's chambers, he told Dalton that he would get 40 years for the murder and 30 years for the rape to run concurrently with the Wisconsin life sentence. (*Id.*) Dalton testified that he asked Maupin to get him a lower sentence. (*Id*. at 26.)

Thereafter, Dalton testified that he was brought into the courtroom where Judge Maloney presided. (*Id.*) Dalton explained that after he was brought into the courtroom, Maupin gestured to him not to talk and told him that they were going to sentence him under the plea agreement. (*Id.*) In addition, Dalton testified that he did not recall that Judge Maloney told him he was going to be sentenced to 70 years' imprisonment. (*Id.* at 27.) He also stated that at the time of his sentencing, he did not know what an extended term sentence was and Judge Maloney never told him he was going to get an extended term sentence. (*Id.* at 28.)

Moreover, Dalton testified that "under the plea agreement Mr. Maupin told me I was getting 40 for the murder, 30 for the rape. So it's actually 70, but it's only really 40. And that's what I thought I was getting." (*Id.* at 29.) Also, Dalton stated that if he had known it was 70 years, he never would have pleaded guilty. (*Id.*) Dalton, however, offered no explanation why the State would agree to allow him to plead to the non-extended maximum term for murder, *i.e.,* 40 years, especially because he was eligible for the death penalty.

On cross-examination, Dalton admitted that he was convicted in Wisconsin for murder

and convicted in Lake County for rape. (*Id.* at 34.) Dalton also admitted that his attorney ordered a behavior clinical examination before his plea hearing on November 20, 1981 and that the psychiatrist had determined that he was fit to stand trial. (*Id.* at 36.) Dalton, however, denied that Maupin told him he could face the death penalty. (*Id.* at 37.) Dalton also testified that he never told the court that he was dissatisfied with Maupin's representation. (*Id.*)

Furthermore, Dalton claimed that he attempted to appeal his guilty plea by sending letters to the public defender's office, the Clerk of Courts, and Judge Maloney every three or four weeks for the last 20 years. (*Id.* at 70.) In support of his argument, Dalton presented a letter requesting that Maupin appeal his guilty plea. (*Id*. at 73.) As the Court noted earlier, the only evidence that Dalton mailed this letter is his own testimony and Maupin denies ever receiving the letter. In any event, the letter does not mention Dalton's extended term sentence, but instead states that Dalton wanted to appeal his guilty plea because he was mentally incompetent, an issue that is not before the Court. (*Id.* at 73-74; Pet'r Ex. 5.)

Meanwhile, Respondents impeached Dalton by pointing out that in his 1989 post-conviction petition, Dalton stated that he was sentenced to 70 years for murder and 30 years for rape and did not challenge the extended term sentence. (Evidentiary Hr'g Tr. at 42-45.) In fact, the first time Dalton mentioned the extended term sentence was in a summary judgment motion concerning his post-conviction petition filed in 1995 after retaining a "jailhouse" lawyer. (*Id.* at 45, 83-84.) The Court also notes that Dalton did not make this argument until after the Office of the Official Court Reporters of the Circuit Court of Cook County informed him that the state could not locate his plea hearing transcript.

In sum, Dalton's testimony lacks credibility. First, Dalton is a convicted felon and

Respondents impeached him with his prior convictions under Federal Rule of Evidence 609. Further, Dalton's testimony that he would not have pleaded guilty if he knew he faced a 70 year sentence is incredible in light of the fact that he was sentenced to life in prison in Wisconsin, all his sentences were to run concurrently, and the death penalty was a possibility. As explained earlier, the Court gives little weight to Dahlia Dalton's affidavits, plus her averments do not corroborate Dalton's evidentiary testimony. Specifically, although she averred that Judge Maloney did not exactly state that Dalton would serve an "extended term sentence," her affidavits lack any information as to whether Judge Maloney told Dalton about the 70 year sentence for the three murder counts. Finally, Dalton's version of the events of November 20, 1981 is undercut by Hyman's and Maupin's credible testimony, as well as the documentary evidence. There is no reason to disbelieve this evidence.

## II.   Conclusions of Law

While no transcript of Dalton's guilty plea exists, from the testimonial and documentary evidence obtained at the evidentiary hearing the Court concludes that Dalton was informed – by both his defense attorney Gerald Maupin and Judge Maloney – that he would be sentenced to 70 years' imprisonment if he were to plead guilty. Based on the Seventh Circuit's narrow remand, the Court thus concludes that Dalton made his guilty plea knowingly and voluntarily because he was aware of his eligibility for the extended term sentence of 70 years' imprisonment when he pleaded guilty. *See Dalton,* 402 F.3d at 734.

The Court relies on Hyman's and Maupin's testimony, as well as the documentary evidence, in making its conclusion. Taken together, Hyman's and Maupin's testimony confirms that Dalton received the sentence for which he bargained. Indeed, based on their testimony and

the contemporaneously prepared documents, the plea agreement of 70 years' imprisonment for the three murder charges was a bargain in the context of a death penalty case, especially in light of the fact that the 70 years would run concurrently to the Wisconsin and rape sentences.

Although it is unclear whether Judge Maloney specifically stated that Dalton would face an "extended term sentence," the testimony reveals that both Maupin and Judge Maloney explained to Dalton that he would be sentenced to 70 years' imprisonment if he pleaded guilty. Because the state court is not required to use talismanic language during a plea colloquy, the Court rejects Dalton's argument that Judge Maloney was required to use the words "extended term sentence" to obtain a valid guilty plea. *See Stewart v. Peters,* 958 F.2d 1379, 1384 (7th Cir. 1992).

Accordingly, Dalton has failed to make a prima facie showing that Judge Maloney violated his constitutional rights to due process. *See Grundset,* 675 F.2d at 878. Even if the burden were on Respondents to establish that Judge Maloney violated Dalton's constitutional rights, the Court's conclusion would be the same because a preponderance of the evidence presented at the evidentiary hearing established that Judge Maloney and Maupin informed Dalton that he would be sentenced to 70 years if he pleaded guilty. The Court thus denies Dalton's habeas petition.

## **CONCLUSION**

For these reasons, the Court denies Dalton's habeas petition under 28 U.S.C. § 2254.

Dated:  December 16, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**